Move to the second case this morning, United States v. Miller. Afternoon, Your Honors. My name is Justin Raver, and I represent Brian Miller. The primary issue presented on appeal today is whether the images produced by Miller that led to his finding of guilt for exploitation of a minor met the definition of lascivious as set forth in the statute and the cases interpreting that definition. Our position is that these images do not meet this definition and are more indicative of a voyeuristic tendency in Mr. Miller. Judge Shaddon, in regard to the content of the videos in his opinion, stated, and I quote, in other words, and I say this because I viewed the videos and to me and to many others, these videos, after viewing them, are simply naked teenage minor girls. That is the end of the quote. It's been well established that mere nudity is not enough to trigger a finding of lasciviousness. Furthermore, the Russell decision, citing Knox, set forth that a lascivious display is one that draws attention to the genitalia or the pubic area in the subject in order to excite lustfulness or sexual... What if it depicts the entire body, including pubic areas and other areas that you refer to? Your Honor, in that case, that is the case of these videos. I would argue that if it's the entire body, it's not drawing attention to any one part. If it's not drawing attention to any one part, it's not drawing attention to the genitalia. Therefore, an image such as that can't not meet the definition of lascivious. You're looking at a comparison, I think, between an objective standard and subjective standard, at least the way I see it. In other words, what the judge looks at or what a doctor looks at or sees naked teenage girls, as opposed to a guy who cuts a hole in the wall and then boxes out a mirror and puts a camera through that and then entices the girls to go downstairs and take a shower and he proceeds to take a picture. Indeed. If I understand the question, you have to, arguably you have to look at it from an objective standard. From what? You have to look at the images from an objective standard. Because if you look at it subjectively, you have to infer the intent of the person who is creating the image. The third district warned against this in the Villard decision, saying that you should look to the four corners of the image. Because if you look to the intention of the person creating the image, it would possibly lead to a conclusory bootstrapping of intent. Human sexuality is a very complicated thing. We here today are going to be able to define why some people are attracted to certain things. If you start to look at the intent of the person who created the image or the intent of the viewer, harmless images could create a lustful experience to certain people. It argued to the extreme that a pedophile could be excited by a Sears catalog if that is his intent in doing so. Teenage boys get excited by the underwear ads in the Sears world book anyway. Yes, they would. They would. Yes, and they have. Looking at an underwear ad is a little different than cutting a hole in a wall and scraping material off a mirror and buying a clear shower curtain. It is absolutely different, Your Honor. But when we look to the behavior that Mr. Miller exhibited in creating his images, as you said, drilling the hole, scraping the mirror, positioning the camera, and then the clear shower curtain, in the absence of Miller's testimony, he did not testify as to his intent. These would all indicate a voyeuristic intent. The fact that this was a static image and there was no manipulation or scene building, there was no directives or direction on the part of the victims. What about telling them to take a shower down in the basement? There's a directive to focus their bathroom activities. Get them in the picture, so to speak. Yes, but there was no direction to shower in a certain way or to pose or to suggest sexuality. Well, I can understand that. Go down there and sit down and spread your legs, you know, come on. All he wanted to do was go down and take a shower. Yes, there's no question what he did was not wrong. Nobody's suggesting that this wasn't an act that is criminal in nature. What we're suggesting is that the images produced don't meet the definition under this statute. And as such, directing the girls shows an intent to covertly record. It shows an intent to videotape. What it doesn't demonstrate is what Miller felt when he viewed these images. There's no evidence of what his desire was. Would he have to have him testify in order to do that? Testimony would be a good way, but I'll admit that that's probably not going to happen very often. No, of course it isn't. Now, other ways of doing it could be by the circumstances in general, if there was posing, if there was scene setting. Now this is going to go to a little bit of an extreme, but things like lubricants or soft lighting and the types of imagery that you see in traditional pornographic materials would indicate... You may have the advantage of the court in that aspect. I'm sorry, I didn't... So you may have the advantage of the court in your knowledge of that sort of thing. Well, I was in the military for a time. I'm not going to certify as an expert in pornography. So was I, but they didn't show pornographic movies on a regular basis, unless I was in the wrong army. I was in the Navy, sir. I was in Vietnam, and they showed them. I'm betraying my own personal experience, and that's rather embarrassing. So I'll get back to the point. In making a finding of lasciviousness in this case, the trial court used suspect reasoning. In the trial court, Judge Shadid set forth its reasoning when it said, Miller did not zoom only on the face or even on the breast area, which is further reasonable inference that he intended for the pubic area to be a focus, in addition to the other physical attributes of these minor girls. So in the judge's definition, as he sets foot, he has admitted that there is no focal point, that these images are static videos of naked girls going about ordinary bathroom activity. And yet he finds lasciviousness in that argument that since there is no focus, the pubic area had to be a focus. And that doesn't fit the definition. What do you think? Do you mean he should have zeroed in on just the pubic area or something? Indeed. Such as the Brown case, for instance, that it took images, neck to above the knee. And that was the focus, that was drawing attention to the pubic region, genital region. Or Russell, when the girls were posed, drew attention and created something other than a mere nudity image. Other examples, Miller, he could have positioned the camera at a lower angle. He could have set up mirrors. There's innumerable things he could have done. He did not zoom the camera. He did not do any cropping. He didn't do any post-production modifications of these images whatsoever. These are several images, over 25 videos, short duration where the pubic region is of even shorter duration in these videos. The only movement of the camera tracks the girls as they move about this bathroom. There is... Now, Judge Shaddon, in addition, he stated his understanding of the requirements of the statute in regard to the focus on the genitalia when he said, there is no requirement under the statute to focus only on the pubic area, just that there is a focus on the pubic area. But in finding lasciviousness in this manner, the trial court seems to ignore the statute, the definition in cases like Russell, that state that you have to draw attention to the pubic region, attention to the genitals. The trial court states specifically that there is no requirement to focus only on the genitals, and that's true. However, the case law in plain reading says that you have to draw attention to them. Maybe not only them, but you have to draw attention to the genitals. Now, assuming, however, that the trial court's finding that the failure to focus on the gen... I'm sorry, that a failure to focus on anything at all is a focus on the genitals, meets the language of the definition, these images still do not meet the standards of the finding lasciviousness because there's no evidence that they were intended to create lustfulness or sexual stimulation in the viewer. The United States has taken the positions, pretty much saying, well, what else could have been the point? But Miller is a voyeur, and that might have been his intention. Perhaps Miller is excited by secret videotaping. We can never know. And this is mere speculation on my part. And the defendant didn't testify, nor can a reasonable inference be drawn from the circumstances. We could speculate what his intent was. Don't I recall it, including in the pornography or whatever pictures he was producing, he produced pictures of himself having sexual intercourse with other females? Indeed. The United States... I give you a hint of what he was thinking about when he was taking pictures. Yes, and the United States had argued that that is a show's intent. But that would be more persuasive... What would you say it showed? I'm sorry, Your Honor. What would you say it showed? I would say it shows a voyeuristic tendency. There's 25 images. He's in it. What? He's not just a voyeur. He's part of the movie. He is. But he's videotaping unbeknownst, unmodified, unzoomed girls in sex acts. He has a videotape of him watching a videotape that he made. How much more voyeuristic can one be? Your Honor, I posit that this finding of guilt did not follow the definition to create a lascivious image. And as such, his finding of guilt should be acquitted. And I reserve the rest of my time for rebuttal. Thank you, Counsel. Mr. Bass? Good morning, Your Honors. Timothy Bass on behalf of the United States. Your Honors, we are asking this Court to affirm this judgment of conviction and sentence because, one, the evidence was sufficient to support Judge Shadid's verdict. Two, the significantly below-guideline sentence was reasonable. And three, the special conditions of supervised release were either not an abuse of discretion or plainly erroneous. With respect to the sufficiency of the evidence, Your Honors, we are not asking this Court to tread on the outer boundaries of what the definition of lasciviousness is. Instead, we are much removed from that outer boundary. We're simply asking the Court to affirm Judge Shadid's sound application of this Court's decisions in Price and Russell when he concluded that this evidence, which, Your Honor, Judge Shadid questioned, a criminal conviction is inherently subjective. And particularly this criminal conviction, where the statute itself talks about two instances of the defendant's intent, one, that he had the specific intent to produce a lascivious image, and two, that he had the purpose in using the minors to produce such an image. This Court has said in Russell and repeated in Price that it has never used the term zoom. It has simply said that the focus of the image must be on the genitals, or the image must be otherwise sexually suggestive. And I would submit to Your Honors, as I did to Judge Shadid, what other inference on this evidence could Judge Shadid have drawn? The defendant in this case, as he did to Judge Shadid, is now asking this Court to issue a ruling that says any voyeur who takes images of minor females and doesn't zoom them can never be convicted of the federal child pornography production statute. Let's be clear. That is exactly what he is asking this Court to do, that any voyeur who takes images such as these and doesn't zoom them can never fall within the definition of the federal child pornography statute. That is a pretty sweeping ruling that he is asking this Court to make. I guess what you're saying is this is not a state-of-the-art filming effort. Obviously, this is something he put together with, I never quite understand how you can move something in these lined-up holes or whatever, but it's obviously not with lighting and music and other things, it was just straight-up pictures, but that's what he did. Now, I guess that's what you're saying is that it didn't require a zoom mechanism. Correct, Your Honor. Because, obviously, it just had a camera or whatever it had, I don't know what he had. It wasn't zoom. It was a cell phone, Your Honor. Whatever it was. Okay, I don't know enough about those. But, Your Honor, I think if you look at the, if the Court were to look at the videos, you can see, as I think Judge Shadid did, that the circumstances under which the defendant took to take these videos using the cell phone, carving out a small hole in the drywall, and then through the mirror, that those circumstances themselves inhibited, if not precluded, zooming. But what the evidence did clearly show is that the defendant stood behind, stood in that closet, or stood in that utility room, and peered through those holes and tracked the movement of the girls as they moved around the shower, after he had not only placed those on the drywall and the mirror, but installed a clear shower curtain. Now, I assume he had accumulated these and stored them someplace, is that correct? He took each of them on his cell phone, Your Honor, and then later, when the search warrant was executed and the cell phone was recovered, an analysis of the memory card on that cell No, is that something you can go back and view? Absolutely, Your Honor, and we did that. That's all I'm asking. Yes. It's not something that is a one-time viewing. You can bring those someplace else and look at them. Correct, Your Honor, and we did that in our presentation of evidence to Judge Shadid. We presented each one of the 22 videos pertaining to each of the 22 counts that we asked for and we went through each one of those and published those to Judge Shadid. But you indicated he could have looked at them any time he wanted after the fact. Yes, Your Honor, and not only was there that fact, but we also presented evidence as to his intent, both for the production statute itself, but also for the attempted production statute. The fact that on that same cell phone, the defendant had recorded a video of himself and Ms. Guzman, his girlfriend, having sexual intercourse, and then the defendant had also recorded himself with that same cell phone watching a prior VHS recording of himself engaged in sexual intercourse with a prior girlfriend years earlier. So there was no doubt from that evidence, his use of the cell phone, that the cell phone itself was a tool for his own sexual gratification and was extremely probative evidence as to his intent. And again, the statute itself requires a specific intent finding, an intent to produce a lascivious image, and the attempt statute requires an equivalent intent finding. What did the defendant do? Congress has said that not only the completion of an offense is punishable, but the attempt to complete that offense is equally punishable. And we would submit that at least two of the videos pertaining to two of the counts, which depicted one of the minor females in the shower or in the bathroom, clearly showed her vaginal area and her labia. Now that was a lascivious image, indisputably, in our view. There are other videos, Your Honor, that are less clear. We would concede, such as the videos where there's an obscured view of the pubic area through the shower curtain. But all of the videos reflect the defendant's intent to peer through those holes and track their movement and capture their genital and pubic area wherever they went. To take these pictures, I assume it required he had to be there manipulating the camera. It wouldn't be something you just set up and then go away. No, Your Honor. Because all of these were taken with a cell phone. I see. They had to be taken. They were taken by him standing in that utility room, placing that cell phone up to the hole so that the camera lens could peer through those holes that he had created into the bathroom, and then he could, using that cell phone, track the girls as they moved around the bathroom. So he'd have to know when they went to shower and so forth. Yes, Your Honor, yes. And if I may, finally, if it's... What's Mr. Miller's employment? Pardon me, Your Honor? What's Mr. Miller's employment? If any. If any. What did he do for a job? I believe, Your Honor, the record reflects that he had some employment in construction. We did ask at trial, we did ask a couple of the witnesses whether he had previously been employed on a part-time basis at least at the school with some coaching experience. It was unclear whether he, as to when it was that he had that experience, but I believe one of the girls testified that he at least coached wrestling. But I believe the answer to your question, Your Honor, I'm not totally clear, but his employment was construction-related. He did that sort of coaching stuff. There was something about track as well, volunteer sort of. Yes, yes, Your Honor. So it may have been a volunteer situation as opposed to... He had kids that were participants. He did, Your Honor, and that's the whole context of this case and how it arose, was that the defendant had three children, had two sons and a daughter. His older son and his daughter lived with him, and each of these five girls were friends of his daughter, and one of whom was the girlfriend to his son. His son blew the whistle on it, ultimately, didn't he? He did, Your Honor. The case would never have come about had the son not raised these issues twice. He first found the defendant's computer, and there's evidence to suggest that the defendant transferred at least some of the videos from his cell phone to his laptop computer, and his son was looking at that laptop computer in 2011 and found a video, which the defendant claimed was his girlfriend and not a minor female. The laptop computer subsequently disappeared, and that was the end of the matter. And then later in 2000, in the subsequent year, the defendant's son went down into that basement bathroom, and he found the holes, and he confronted the defendant again, and that resulted in an argument and the son leaving the home, and the defendant, for some reason, called the police, and that resulted in a search warrant. Oh, because he threatened him? The kid threatened him or something, so he called the police, I see. Yes, and the defendant contacted the police. They spoke with the defendant's son, who then provided the information on which the search warrant was sought. If I may, Your Honor, make one last point about the attempt, rationale for sustaining this conviction. Each one of these counts charged in an attempt, and so even if you assume giving the defendant every benefit of the doubt, and I would submit that that would be an unreasonable position, but even if you took that position and assumed that every one of these 22 videos were not lascivious, you still return to the question of whether or not the evidence was sufficient for an attempt conviction. And that, as we all know, attempt does not require completion of the offense, otherwise there would be no reason for an attempt statute. And Judge Shadid made specific findings. He didn't just say that these were just videos of naked girls. He went beyond that and talked about the substantial steps, the numerous steps that the defendant took, including numerous steps that he took before he could even take these videos, such as carving the holes in the bathroom, installing the clear shower liner, and then while he was taking the videos, tracking the girls' movements throughout the bathroom. Judge Shadid didn't mention this additional evidence, but it's in the record and relevant. He pointed to the defendant's intent regarding his consciousness of guilt after it was discovered, his threat to harm himself, the fact that he had psychological testing, and he mentioned to a girlfriend that one of the girls, a half-sister to his youngest son, resembled his mother, and his mother, Ms. Nishunger, was the person in the VHS video that the defendant was having sex with that he was watching and recording years later with that same cell phone. Now, all that evidence, taken as a whole, as we must in viewing a verdict, suggests at least a reasonable inference that Judge Shadid could draw that the defendant attempted to create a lascivious video. What else did he attempt to do? Because if an attempt conviction cannot be sustained, then that would seem to suggest what the defendant is suggesting, that he only intended to do that which he did, and that if there had been a lascivious exhibition, let's say that one of the girls had attempted to do something lascivious, and I don't want to suggest the details of what that might be, but we can all imagine what that might be, that if they had done such a thing, that he would have immediately turned the camera off. Now, there's no evidence to suggest that. The defendant intended not only to do what he did, but to capture everything he possibly could capture. There's no indication of any effort to avoid taking, photographing those things which are considered to be lascivious. No, there's not, Your Honor, and I would point you back to those two videos that we suggest clearly are lascivious. When Ellen, the minor female, is standing in front of the mirror, she's standing right in front of the mirror, completely nude, and her vaginal and labia are clearly visible. The camera kept rolling. He didn't turn it off, and that clearly suggests, in our view, that he intended to capture everything he possibly could capture, and if any of those girls had done something more sexually explicit, he'd have been right there to capture it. In other words, there weren't any pictures of them putting on their clothes or putting on a shirt and all that kind of, once they're dressing, once the nudity is over, you don't take pictures, right? No, certainly not. Everything was on the front end of undressing and taking a shower. There certainly were not any videos of the girls dressing after the fact. These videos were all undressing and then showering. I see that my time is up. We would ask that the judgment be affirmed. Thank you, Your Honors. You have four minutes. The United States posits that my argument is no voyeur can be found guilty. No voyeur can be found guilty of this, and that's what we're asking, and that's not what I'm saying. A voyeur can be found guilty of that if the images that he creates are lascivious. As far as attempt is concerned, you need to look at what occurred, what was attempted. Attempt is a slippery slope because it creates an implicit need to find the intent, and as I said during my primary argument, that's looking inside somebody's heart and trying to determine what their intent was. The facts indicate that he took a covert video. He also took covert videos of him having sexual intercourse with adult women. He also took a video of him watching a video of him having sex with adult women. All of this taken seems to indicate mere voyeuristic tendencies. This case is quite analogous to the Steen case, where I believe it was the Fifth Circuit, found that images taken similar to this were not lascivious. In the Steen case, a fellow covertly videotaped a woman in a tanning booth. The girl was underage. Her pubic area was shown. There was no attempt to manipulate, no zooming, no cropping, no positioning the camera to draw attention to the genital region, and the court found that that is not a lascivious image. The facts are very similar, so similar as to afford this court the opportunity to possibly correctly make an analogous find. They mentioned that the laptop disappeared, but that's a bit disingenuous. There was evidence demonstrated at trial that this laptop was damaged in lightning and was completely destroyed. As to intent, the Third Circuit, as I mentioned before in Villard, cautioned that intent is dangerous in these cases. We need to look at the product to demonstrate the definition of lasciviousness, because to look into the heart and mind is nearly impossible. I once again state, Miller did not testify, and very little evidence of his innermost feelings was put forth. The United States correctly tries to tie these prior videos, but there was no relation to the sex act and the teenage girls. He didn't try to pose them or manipulate the image to make them similar. So to relate them back to try to paint a picture of what was in his heart, I think is going a step too far. We can't do anything external, obviously, because they wouldn't do it. No. It has to totally be secret and watch them do what they would do without any manipulation. Well, he doesn't have to. There are horrific cases that have probably been in front of this court, as far as other courts, where that exact thing occurs. Exactly what? He could have used undue influence to force these girls to do acts to satisfy his stimulation. It's a different thing. You've got assault and all sorts of things. And that's my point. He didn't do that. The United States also points to the one image of the vagina and labia. The fact remains, though, that that image, it's been long held that mere nudity isn't enough. And a visible vagina, a visible labia, visible any part of anatomy that is not ordinarily covered with clothes, that is not covered in clothes, is nudity in the absence of something else. The United States alluded to other activities. I'll wrap up by saying that these images, once viewed, do not meet the definition of lascivious because they do not draw attention to the genitals. And for that reason alone, Mr. Miller's conviction should be overturned. Thank you, Your Honor. Thank you, counsel. Thanks to both counsel. The case will be taken under advisory.